O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN ANITA ALDERSON,         ) | Case No. CV 12-10588-JPR |
|                               ) | |
|           Plaintiff,          ) | |
|                               ) | MEMORANDUM OPINION AND ORDER |
|      vs.                      ) | AFFIRMING THE COMMISSIONER |
|                               ) | |
| CAROLYN W. COLVIN, Acting     ) | |
| Commissioner of Social        ) | |
| Security,[1]                  ) | |
|                               ) | |
|           Defendant.          ) | |

## I.  PROCEEDINGS

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).  This matter is before the Court on the parties' Joint Stipulation, filed December 9, 2013, which the Court has taken

---

[1] On February 14, 2013, Colvin became the Acting Commissioner of Social Security.  Pursuant to Federal Rule of Civil Procedure 25(d), the Court therefore substitutes Colvin for Michael J. Astrue as the proper Respondent.

1

under submission without oral argument.  For the reasons discussed below, the Commissioner's decision is affirmed and this action is dismissed.

**II.   BACKGROUND**

Plaintiff was born on November 1, 1962.  (Administrative Record ("AR") 35.)  She has a bachelor's degree in business.  (Id.)  She previously worked as a payroll clerk, a mail clerk, and a massage therapist.  (AR 36-37.)

On October 2, 2009, Plaintiff filed applications for SSI and DIB.  (AR 103-15.)  After Plaintiff's applications were denied, she requested a hearing before an Administrative Law Judge.  (AR 70-71.)  A hearing was held on October 25, 2010, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE").  (AR 29-57.)  On March 3, 2011, the ALJ issued a written decision finding Plaintiff not disabled.  (AR 14-27.)  On May 3, 2011, Plaintiff requested review of the ALJ's decision.  (AR 11-13.)  On August 31, 2012, the Appeals Council denied review.  (AR 5-10.)  This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  § 405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at 401; Lingenfelter

v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

   A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, she is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial

gainful activity, the second step requires the Commissioner to determine whether she has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether she has sufficient residual functional capacity ("RFC")[2] to perform her past work; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If she meets that burden, a prima facie case of disability is established. Id. If that happens or if she has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

determination comprises the fifth and final step in the sequential analysis. §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

    B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 6, 2008, the alleged onset date. (AR 20.) At step two, the ALJ concluded that Plaintiff had the severe impairments of "major depression, single episode, alcohol abuse and cocaine abuse." (<u>Id.</u>) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 22.) At step four, the ALJ found that Plaintiff had the RFC to perform "a full range of work at all exertional levels" but with certain nonexertional limitations: "ability to maintain focus and attention is 90% of time for work activities, ability to deal with coworkers and supervisors is 90% of the time; requires a low stress work environment; would need closer supervision to ensure staying on task but could perform regular activities for normal work." (<u>Id.</u>) Based on the VE's testimony, the ALJ concluded that Plaintiff could perform her past work as a mail clerk, as both generally and actually performed. (AR 23.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 24.) The ALJ thus did not reach step five of the analysis.

**V. DISCUSSION**

Plaintiff alleges that the ALJ erred in determining that she could perform her past work as a mail clerk because that job requires reasoning level three, <u>see</u> Dictionary of Occupational Titles ("DOT") 209.687-026, 1991 WL 671813, and yet the

hypothetical the ALJ posed to the VE included a limitation to "simple, repetitive work," which, Plaintiff claims, is inconsistent with that reasoning level.  (J. Stip. at 13-14 (citing cases).)

Plaintiff's argument fails because the ALJ did not include a limitation to "simple, repetitive work" in his final RFC determination, and the omission of such a limitation was supported by substantial evidence in the record as a whole. Thus, the cases Plaintiff relies on are inapposite.  In any event, as explained below, any error was harmless.

A. Relevant Facts[3]

In June 2008, Plaintiff's treating mental-health facility, the Los Angeles County Department of Mental Health, conducted an initial assessment of her; Plaintiff apparently had been ordered to undergo therapy as part of a child-abuse investigation.  (AR 241, 244.)  A licensed registered social worker diagnosed Plaintiff with major depressive disorder and unspecified anxiety but found that Plaintiff had no perceptual, thought-process, thought-content, or behavioral disturbances.  (AR 245-46.) Further, her concentration, abstractions, judgment, intellectual functioning, memory, and insight were all unimpaired, adequate, or intact.  (AR 245.)  The progress notes from the facility, spanning mid-2008 to September 2010, showed that Plaintiff's mental problems somewhat correlated to her lapses in taking her

---

[3] Because the parties are familiar with the facts, they are summarized here only to the extent relevant to the contested issue.

medicine.[4] (See, e.g., AR 247 (Plaintiff reported "severe mood swings" and was "encouraged to stay on her meds"), 249 (Plaintiff looked disheveled and "wasn't taking all meds"), 252 (goal was "to stay on her meds so she can function more responsibly"), 260 ("hyperactive off her meds"), 266 ("problems with drinking and drugs" "always happens when she stays off her meds").) Plaintiff was consistently looking for work (AR 251, 252, 253, 257, 258, 261, 262) and was in a markedly better mental state when she was working part-time or was in school (see, e.g., AR 265 ("Client reports in a happy mood – states that she feels good about herself now that she is back to work."), 267 ("Doing better now in school"), id. ("Client continues to do well . . . in school which makes her feel good about herself.")). Plaintiff testified at the October 2010 hearing that her depression had "stayed about the same" since August 2008. (AR 47-48.)

On February 14, 2010, board-eligible psychiatrist Neda Javaherian examined Plaintiff at the Social Security Administration's request. (AR 207-11.) After performing a mental-status examination and administering several psychological tests, Dr. Javaherian diagnosed major depressive disorder with cocaine and alcohol abuse. (AR 210.) She found that Plaintiff's ability to understand and carry out simple instructions was "normal"; her ability to understand and carry out complex or detailed instructions, maintain focus and concentration sufficient to do work-related activities, relate to and interact with coworkers, colleagues, and supervisors, and deal with

---

[4] Many of the progress notes are illegible.

changes in the workplace was mildly impaired; and her ability to cope with workplace stress and engage in activities of daily living was moderately impaired.  (AR 211.)

Dr. Javaherian noted that Plaintiff had been taking Paxil[5] for her depression since 2000, shortly after her son died of cancer (AR 208);[6] as discussed, the progress notes from the Department of Mental Health showed that she in fact did not take the Paxil regularly (see, e.g., AR 247, 249, 252, 260).  She stopped working in 2006 "due to knee problems."  (AR 208.)  Plaintiff apparently told Dr. Javaherian that she had last used cocaine "about a week ago" (id.), although she told the ALJ during the October 2010 hearing that she had not used cocaine "this year at all" (AR 46).  She also reported drinking daily (AR 209); at the hearing she told the ALJ that she had since stopped drinking, sometime that summer (AR 46).[7]

On March 4, 2010, psychiatrist Sidney Gold reviewed Plaintiff's medical records, completed psychiatric-review-technique and mental-RFC-assessment forms, and wrote a case

---

[5] Paxil, or paroxetine, is a selective serotonin-reuptake inhibitor used to treat depression, panic disorder, social anxiety disorder, obsessive-compulsive disorder, and posttraumatic stress disorder.  Paroxetine, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a698032.html (last updated Apr. 13, 2012).

[6] There is in fact no evidence in the record of Plaintiff being prescribed Paxil before she began the mandatory counseling with the Department of Mental Health.

[7] Upon beginning therapy at the Department of Mental Health, Plaintiff apparently told the medical providers there that she had no current or past substance abuse problems.  (AR 243.)

analysis.[8] (AR 214-28.) On the PRT form, Dr. Gold opined that Plaintiff's "depression with concomitant use of cocaine" resulted in moderate restriction of activities of daily living; mild difficulties in maintaining concentration, persistence, and pace and social functioning; and no episodes of decompensation. (AR 222-24.) He repeated Dr. Javaherian's findings and noted that "[b]ased on the above, the claimant is able to perform simple work without restrictions." (AR 224.)

On the mental-RFC form, Dr. Gold opined that Plaintiff had no apparent limitations on her ability to remember locations and worklike procedures or interact appropriately with the general public. (AR 225-26.) He found that she was "not significantly limited" in most of the categories assessed, including ability to understand, remember, and carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number of breaks; accept instructions and respond appropriately to criticism from

---

[8] Dr. Gold's electronic signature includes a medical specialty code of 37, indicating psychiatry. (AR 214); see Program Operations Manual System (POMS) DI 26510.089, U.S. Soc. Sec. Admin. (Oct. 25, 2011), http://policy.ssa.gov/poms.nsf/lnx/0426510089; POMS DI 26510.090, U.S. Soc. Sec. Admin. (Aug. 29, 2012), https://secure.ssa.gov/poms.nsf/lnx/0426510090.

supervisors; get along with coworkers and peers; maintain socially appropriate behavior; and respond appropriately to changes in the work setting.  (AR 226.)  She was "moderately limited" only in her ability to understand, remember, and carry out detailed instructions.  (AR 225.)  Dr. Gold concluded that Plaintiff "retains the ability to understand, remember, and carry out simple work-related tasks and has no significant limitations in the ability to sustain concentration/persistence/pace, relate to others, or otherwise adapt to the requirements of the normal workplace."  (AR 226.)

At the October 25, 2010 hearing, Plaintiff testified that she slept most of the day and was "always just on edge" when she was awake.  (AR 42.)  She said that she had panic attacks "at least once a week," during which she would "snap," "start yelling," "start feeling real hot," and "get a bad headache."  (AR 50-51.)  She said she usually stayed in her pajamas all day and that her mother did most of the housework and chores.  (AR 43-44.)  She occasionally volunteered at her daughter's school and went for walks daily.  (AR 36-37, 52.)  She confirmed that she had no problems other than depression.  (AR 48.)

After Plaintiff testified, the ALJ asked the VE whether
> a younger individual under age 49, with a college level
> education, the past relevant work that you've
> described[,] [who] can do simple, repetitive work[,]
> [c]an maintain focus and attention 90 percent of the time
> for work activities[,] [c]an deal with appropriately co-
> workers, colleagues and supervisors 90 percent of the
> time[,] [r]equires a low-stress work environment[,]

1              [w]ould need closer supervision at work to ensure staying
2         on task, but could do normal work activity for regular
3         work[,] [with] no physical impairments
4    could perform any of her past relevant work.  (AR 55-56.)  The VE
5    testified that she could perform the mail-clerk job both as
6    described in the DOT and as actually performed.  (AR 56.)  The
7    ALJ then asked whether a person with all the same attributes but
8    who would miss two or three days of work a month could perform
9    any of the past relevant work or any jobs in the local, regional,
10   or national economies, and the VE responded no.  (Id.)  The ALJ
11   did not pose any other hypotheticals to the VE.  Plaintiff's
12   counsel declined the ALJ's invitation to question the VE.  (Id.)
13        In his March 3, 2011 decision, the ALJ did not limit
14   Plaintiff to simple, repetitive work but rather noted, consistent
15   with the hypotheticals posed to the VE, that Plaintiff had modest
16   limitations in certain areas.  (AR 22.)  The ALJ gave "great
17   weight" to the findings of the "treating physicians" as well as
18   those of Drs. Javaherian and Gold, noting that Plaintiff's
19   ability to understand and carry out simple instructions was
20   "normal" and her ability to understand and carry out complex or
21   detailed instructions was only mildly impaired.  (AR 21, 23.)
22        The ALJ found that Plaintiff was not credible (AR 23), a
23   finding Plaintiff does not challenge on appeal.  He noted
24   Plaintiff's lack of compliance with her medical treatment in that
25   she had not consistently taken her prescribed medicine and "did
26   not even start mental health treatment because of her own
27   problems, but instead because of a potential child abuse issue
28   which made her very angry."  (AR 23; see also AR 241 (noting that

a "child abuse" case was opened in March 2008).) He noted that Plaintiff told treating medical personnel that she "really needs a job which creates the inference that she believes she is capable of working." (AR 23.)

At step four of the required analysis, the ALJ found that Plaintiff could perform her past work as a mail clerk as actually and generally performed, as the VE had testified, and that the job "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (AR 23-24.)

B. <u>Discussion</u>

The ALJ's RFC finding that Plaintiff was limited to jobs with a few modest workplace restrictions, without the additional requirement that they involve only "simple, repetitive work," was not inconsistent with his finding that Plaintiff could perform her past relevant work as a mail clerk, which requires reasoning level three. <u>See</u> DOT 209.687-026, 1991 WL 671813. Appendix C of the DOT defines "reasoning development" on a scale of one to six, with level three requiring the following aptitudes:

> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

1991 WL 688702.

The ALJ's decision not to include the "simple, repetitive work" limitation in the RFC was supported by substantial evidence in the record as a whole. Nothing in the record indicates that Plaintiff's treating physicians, to whom the ALJ gave "great

12

weight," ever ascribed any workplace limitations to her.  Indeed, the Department of Mental Health's initial assessment of her, in June 2008, just two months before the alleged onset date, was that her mental faculties were intact or unimpaired.[9]  (AR 245.) The notes also consistently stated that Plaintiff did well when she was working or in school.  (AR 265, 267.)  Dr. Javaherian, the examining doctor, to whom the ALJ also gave great weight, opined that Plaintiff had no limitations in her ability to perform simple work and only mild limitations in her ability to understand, remember, and carry out detailed and complex instructions.  The treating doctors' and Dr. Javaherian's findings were fully consistent with the RFC, see Rosales v. Colvin, No. SACV 12-753 AGR, 2013 WL 6152861, at *9 (C.D. Cal. Nov. 22, 2013) (ALJ did not err in failing to include limitation on difficulty level of work claimant could perform in RFC when doctor opined that claimant had no limitation in doing simple work and only mild limitation in following detailed instructions), as well as with the ALJ's finding that Plaintiff could perform her past work as a mail clerk, which is unskilled, see SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985).  Unskilled jobs require only the ability to "understand, carry out, and remember simple instructions," among other things.[10]  Id.  No

---

[9] Plaintiff testified at the hearing that her depression had remained "about the same" since that time.  (AR 47-48.)

[10] Indeed, the mail-clerk job appears to require only simple, basic tasks: sorting mail, opening envelopes, stamping date and time, readdressing mail, "examin[ing] outgoing mail for appearance," sealing envelopes, and folding letters and inserting them in envelopes. DOT 209.687-026, 1991 WL 671813.  The job "may" also entail distributing and collecting mail, weighing

doctor found that Plaintiff had any limitations in her ability to understand, remember, and carry out simple instructions.

Plaintiff argues that the RFC was inconsistent with Dr. Gold's findings and with the hypothetical posed to the VE. (J. Stip. at 13.) Dr. Gold, the nonexamining consultant, did indeed find that Plaintiff was "moderately" limited in her ability to understand, remember, and carry out detailed instructions, and the ALJ did not provide any reason for not crediting that finding. In fact, the ALJ gave "great" weight to Dr. Gold.[11] But any error was necessarily harmless, as "[t]he DOT does not say that a person who is moderately limited in his ability to carry out detailed instructions could not perform the requirements of reasoning level 2 and 3 jobs." Gorsich v. Astrue, No. 09-355-JPG, 2010 WL 5932371, at *10 (S.D. Ill. July 19, 2010), accepted by 2011 WL 833958 (S.D. Ill. Mar. 4, 2011). Although the Ninth Circuit has apparently not yet reached the issue, see Megliorino v. Astrue, No. CV 11-7895 SS, 2012 WL 2847705, at *10 (C.D. Cal. July 10, 2012), courts in this circuit have so held, see id. (holding that plaintiff limited to simple tasks could perform past work requiring reasoning level three); Leon v. Astrue, 830 F. Supp. 2d 844, 849-50 (C.D. Cal. 2011) (same). Plaintiff's ability to perform the mail-clerk job is all

---

mail, keeping a record of registered mail, and addressing mail. (Id.)

[11] Of course, Dr. Gold was a nonexamining physician, and his opinion was therefore entitled to less weight than that of either Plaintiff's treating physicians or Dr. Javaherian, who examined Plaintiff and subjected her to testing. See Lester, 81 F.3d at 830.

14

the more apparent given her college degree. See Leon, 830 F. Supp. 2d at 850 (finding that plaintiff limited to "simple, repetitive tasks" could perform past unskilled job even though it required reasoning level three in part because she had "three or four years of college"); see also DOT App. C, § III, 1991 WL 688702 (noting that reasoning level is part of General Educational Development assessment, including formal education).

As for the hypothetical, once the ALJ confirmed with the VE that Plaintiff could perform the mail-clerk job even with a limitation to simple, repetitive tasks,[12] there was no need for him to ask if she could perform the work without that limitation; obviously she could. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (if ALJ's hypothetical included all limitations ALJ properly found appropriate, ALJ entitled to rely on VE's response).

Plaintiff's reliance on Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (J. Stip. at 7), is unavailing. In that case, the 10th Circuit found that a limitation to simple and

---

[12] Only in passing – and only in her reply – does Plaintiff argue that the VE's testimony was inconsistent with the DOT and that the ALJ erred in not asking her to clarify the discrepancy. (J. Stip. at 14.) But any error was necessarily harmless because the ALJ did not include the simple-work restriction in the RFC. Cf. Bordbar v. Astrue, 475 F. App'x 214, 215 (9th Cir. 2012) (finding any error in ALJ's reliance on VE testimony that person limited to "one to two-step simple instruction kinds of jobs" could perform jobs with level-two reasoning harmless because court "ha[d] no doubt, based on the record, that [plaintiff] could perform jobs at Reasoning Level Two"); see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error harmless when "inconsequential to the ultimate nondisability determination" (internal quotation marks omitted)); Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (same).

15

routine tasks is incompatible with reasoning level three. <u>Id.</u> But here the RFC did not include such a limitation; thus, <u>Hackett</u> is inapplicable. In any event, two other circuits have disagreed with <u>Hackett</u>, <u>see</u> <u>Terry v. Astrue</u>, 580 F.3d 471, 478 (7th Cir. 2009); <u>Hillier v. Soc. Sec. Admin.</u>, 486 F.3d 359, 367 (8th Cir. 2007), as have courts in this district, as noted above. Even more importantly, <u>Hackett</u> concerned a determination of nondisability made at step five of the analysis, at which the Commissioner bears the burden of proof. <u>See</u> 395 F.3d at 1172. Here, as in <u>Leon</u> and <u>Megliorino</u>, the finding of nondisability was made at step four of the determination, at which Plaintiff bears the burden of proof. <u>See</u> <u>Leon</u>, 830 F. Supp. 2d at 849; <u>Megliorino</u>, 2012 WL 2847705, at *10. And as in <u>Leon</u>, <u>Megliorino</u>, and <u>Terry</u>, Plaintiff's counsel declined the opportunity to question the VE at the hearing about the alleged inconsistency (AR 56), leaving unchallenged her testimony that Plaintiff could perform the reasoning-level-three job. <u>Leon</u>, 830 F. Supp. 2d at 850; <u>Megliorino</u>, 2012 WL 2847705, at *11; <u>Terry</u>, 580 F.3d at 478. Given that the ALJ rejected Plaintiff's credibility, a finding she does not challenge, and Plaintiff did not question the VE, she cannot point to any evidence in the record that because of her depression she could not perform her past work as a mail clerk. Indeed, she did perform that job into 2002, three years after she first became depressed. (AR 38-39, 134); <u>see</u> <u>Megliorino</u>, 2012 WL 2847705, at *10 (finding that plaintiff did not meet burden at step four in part because even though he claimed to have been depressed since mid-1990s, he performed cashier job in 1998 and 1999). Accordingly, Plaintiff did not

meet her burden of proof.

Finally, Plaintiff argues that in the Ninth Circuit, "deficiencies in concentration, persistence, or pace compare[] to a finding of a limitation to simple and repetitive tasks," citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). (J. Stip. at 13.) But in Stubbs-Danielson evidence showed that the plaintiff's deficiency in that area was "moderate," 539 F.3d at 1173, whereas here no doctor found that Plaintiff had more than a mild limitation in concentration, persistence, or pace. The ALJ properly accounted for those limitations in the RFC by noting that she required "closer supervision to stay on task" and was somewhat limited in her "ability to maintain focus and attention . . . for work activities." (AR 22.) Further, Stubbs-Danielson held that the ALJ had not erred in failing to include any express limitation on pace in the RFC despite the evidence of moderate limitations. 539 F.3d at 1173-74. For all these reasons, Stubbs-Danielson does not help Plaintiff.

**VI. CONCLUSION**

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[13] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 19, 2014

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[13] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."